UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANTHONY V. CORDOVA,

    Plaintiff,

  v.            Case No. 22-C-1434

RANDALL HEPP,

    Defendant.

---

# DECISION AND ORDER

---

  Plaintiff Anthony V. Cordova, who is representing himself, is proceeding on a claim that Defendant Randall Hepp has been confiscating his subscriptions to Prison Legal News and Criminal Legal News since January 2022 without penological justification, in violation of the First Amendment. Dkt. Nos. 7 & 27. On February 20, 2024, Defendant filed a motion for summary judgment. Dkt. No. 52. Because no reasonable jury could conclude that Warden Hepp was either personally involved in sorting through Plaintiff's mailings or that he confiscated Plaintiff's legal magazine subscriptions, the Court will grant the motion for summary judgment and dismiss this case.

## UNDISPUTED FACTS

  Plaintiff is an inmate at the Waupun Correctional Institution, where Defendant Hepp is Warden. Dkt. No. 54, ¶¶1-2. According to Plaintiff's sworn amended complaint, since January 2022, Plaintiff has not received copies of Prison Legal News and Criminal Legal News, which are subscriptions for legal magazines he paid a lump-sum of $70 for. Dkt. No. 7, ¶8; *see also* Dkt. No. 59, ¶12(a). Plaintiff alleges that, in April 2022, Plaintiff's "people" contacted the publisher of both magazines, who "confirmed that they had been mailing both magazines." Dkt. No. 7, ¶11.

Plaintiff suspects that Warden Hepp "directed" mailroom staff to confiscate these legal magazines because he is a prolific litigator who was planning on filing more civil lawsuits in the future. Dkt. No. 59, ¶¶24, 26.

According to Warden Hepp, he has no personal involvement in prisoner mailings and mailroom staff have been delegated the task of processing prisoner mail. Dkt. No. 54, ¶23. Warden Hepp states that he is not aware of any instance where Prison Legal News and Criminal Legal News were confiscated by staff at the institution. *Id*., ¶25. He explains that neither publication is on the Department of Adult Institutions (DAI) list of banned books/publications due to content that is violent, sexual, gang-related, drug-related, or otherwise improper; and that publications dealing with the law or the legal system are generally not considered a threat to the safety and security of the institution. *Id*., ¶¶11-12, 26-27. Warden Hepp states that, if these publications arrived in the institution mailroom, they would have been delivered to Plaintiff. *Id*., ¶30. He notes that, although a third-party vendor (TextBehind) was processing non-legal mail on behalf of the institution at its off-site location, publications and magazines were still directly sent from the publisher to the institution for delivery to inmates and were not affected by TextBehind. *Id*., ¶¶5-10.

Warden Hepp additionally explains that each inmate has a folder in the institution's mailroom containing information regarding their mailing history. *Id*., ¶4. This folder includes Notices of Non-Delivery (DOC-243), a form generated by mailroom staff when mail cannot be delivered for some reason, including the mail contained contraband, there was insufficient information on the mailing envelope (*i.e*., an incomplete or incorrect mailing address, no return address, no sender name, etc.), the business allegedly sending or receiving the letter does not exist, the mail related to gang activity, and/or the mail threatened blackmail or extortion. *Id*., ¶¶14-16. Plaintiff only has one DOC-243 form on file in the institution's mailroom. *Id*., ¶17. That form does not involve denial of *incoming* mail. *Id*. Instead, on April 26, 2022, one piece of Plaintiff's

2

Case 1:22-cv-01434-WCG    Filed 05/31/24    Page 2 of 7    Document 63

*outgoing* mail (a letter) could not be sent because Plaintiff listed the wrong mailing address for Prison Legal News.[1] *Id.*, ¶18. The institution initially attempted to mail the letter with the address Plaintiff listed, but the United States Postal Service returned it as "undeliverable" with no forwarding address. *Id.*, ¶¶17, 20. Correctional Officer Christopher Ewerdt (not a defendant) completed a DOC-243 form and wrote "wrong address" as the reason for non-delivery of Plaintiff's letter. *Id.*, ¶21. Plaintiff was given 30-days to correct the address and remail it, but he did not do so. *Id.*, ¶22. Plaintiff explains that he did not remail the document within 30-days because he "later found out it was a bogus address." Dkt. No. 59, ¶22. He notes, however, that it was the same address he initially sent the $70 lump-sum payment to. *Id.*, ¶15. After 30-days, the letter was disposed of but a copy of the DOC-243 form was retained in Plaintiff's mailroom folder. Dkt. No. 54, ¶22. There are no DOC-243 forms in Plaintiff's mailroom folder in connection with non-delivery of Prison Legal News and Criminal Legal News. *Id.*, ¶28. Warden Hepp's only knowledge and involvement in this case was ruling on Plaintiff's inmate complaint in May 2022. *Id.*, ¶24; *see also* Dkt. No. 60-1 at 12.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth

---

[1] Plaintiff listed the mailing address as Prison Legal News, PO Box 2420, West Brattlesboro, UT 05303. *See* Dkt. No. 54, ¶19.

specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Warden Hepp argues that he is entitled to summary judgment because he was not personally involved in handling or sorting through Plaintiff's mail, and even if he was, there is no credible evidence showing that he (or anyone else at the institution) confiscated Plaintiff's magazine subscriptions to Prison Legal News and Criminal Legal News since January 2022. Dkt. No. 53 at 4-5. He notes that there are no DOC-243 forms in Plaintiff's mailroom folder in connection with non-delivery of magazine subscriptions; and Plaintiff has not submitted any other credible evidence showing that the magazines did in fact arrive at the institution and were thereafter confiscated by institution staff. Dkt. No. 61. Warden Hepp contends that the magazines were never sent to the institution. *Id*.

"To recover damages under §1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Indeed, liability under §1983 "depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Toward that end, "prison directors and wardens are entitled to relegate to the prison's [] staff" matters that do not require their expertise as a prison administrator. *Gevas v. Mitchell*, 492 F. App'x 654, 660 (7th Cir. 2012).

The undisputed facts show that Warden Hepp did not personally handle or oversee prisoner mail at the institution, including Plaintiff's legal magazine subscriptions in 2022, and that task was delegated to mailroom staff. He further states that he did not know anything else about Plaintiff's circumstances, apart from ruling on his inmate complaint. In response, Plaintiff has put forth no evidence showing that Warden Hepp *was* personally involved in this matter. He only produces documents showing that Warden Hepp ruled on his inmate complaint in May 2022. *See* Dkt. No. 60-1 at 12; *see also* Dkt. No. 62-1. It is well established that Warden Hepp cannot be sued under §1983 for the way he ruled on a grievance, *see Owen v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017), and Plaintiff's speculation that Warden Hepp was involved in "directing" mailroom staff conduct in this case is not enough to survive summary judgment absent evidence such as email communications, written correspondences, affidavits, and/or unsworn declarations to support that conclusory allegation. *See Siegel*, 612 F.3d at 937 (noting that summary judgment is the "put up or shut up" moment in a lawsuit where Plaintiff must produce evidence to support his allegations). Plaintiff does not provide evidence from which a reasonable jury could conclude that Warden Hepp was personally involved in this case.

Additionally, to survive summary judgment on a First Amendment denial of mail claim, Plaintiff must present evidence from which a reasonable jury could conclude that prison staff did in fact confiscate his mail. *Turner v. Safley,* 482 U.S. 78, 89-90 (1987). Warden Hepp has made a prima facie showing that no one at the institution confiscated Plaintiff's Prison Legal News and Criminal Legal News magazine subscriptions because there are no notices of non-delivery in connection with Plaintiff's magazine subscriptions in his mailroom folder. Plaintiff does not put forth any credible evidence disputing this fact. Plaintiff states that, in April 2022, his "people" allegedly "confirmed" with the publisher that the magazines were being sent to the institution, but he offers no affidavit or unsworn declaration from the individual who allegedly contacted the publisher explaining their communication. Plaintiff has not provided any other written

5

Case 1:22-cv-01434-WCG   Filed 05/31/24   Page 5 of 7   Document 63

documentation confirming that he did in fact pay the subscription to the correct entity or that the publisher was mailing out the magazines. Instead, Plaintiff only offers speculation and conjecture that "someone" at the institution is responsible for non-delivery of his magazines because he sent $70 to an address he believed belonged to the publisher, which he later discovered was "bogus," and he never received his magazines in return. Plaintiff also speculates that mailroom staff destroyed any DOC-243 forms that might have been generated in connection with non-delivery of his magazines because "the defendant is not going to leave any evidence of the magazines coming to the institution." Dkt. No. 59, ¶28(a). But, as noted above, Plaintiff's speculation is not enough to survive summary judgment.

In sum, it's unclear who took Plaintiff's $70 lump-sum payment that he admittedly sent to a "bogus address," and on the off-chance it was someone associated with the magazine publisher, why his subscriptions did not arrive at the institution. But it is not reasonable to infer, based solely on Plaintiff's conjecture and speculation, that Warden Hepp was somehow responsible for Plaintiff's failure to receive his legal magazine subscriptions in 2022. Because no reasonable jury could conclude that Warden Hepp was either personally involved in sorting through Plaintiff's mail or that he confiscated Plaintiff's legal magazine subscriptions, the Court will grant the motion for summary judgment and dismiss this case.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment (Dkt. No. 52) is **GRANTED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 31st day of May, 2024.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.